## In re SOLDOSKY et al.

(District Court, D. Minnesota, Second Division. October 31, 1901.)

BANKRUPTCY—SURRENDER OF PREFERENCES—NEW CREDITS.

Bankr. Act 1898, § 60c, which provides that "if a creditor has been preferred, and afterwards in good faith gives the debtor further credit without security of any kind, for property which becomes a part of the debtor's estate, the amount of such new credit remaining unpaid at the time of the adjudication in bankruptcy may be set off against the amount which would otherwise be recoverable from him." entitles any preferred creditor, as defined in section 60a, to a deduction of the amount of such new credits from the preferences which he is required to surrender before proving his claim, and is not limited in its application to cases where the trustee sues to recover the preferences.

In Bankruptcy. On review of decision of referee.

Pfau & Pfau, for creditor.

A. E. Clark, for trustee.

LOCHREN, District Judge. It appears from the record certified up by the referee that the bankrupts were insolvent at all times from November 1, 1900, to the filing of their petition and adjudication, March 2, 1901. On November 19, 1900, they were indebted to the L. Patterson Mercantile Company, for merchandise, in the sum of $217.79, and thereafter paid to that creditor in the usual course of business $136.07, which was received by the creditor without cause for believing that the debtors were insolvent. After receiving such payment the same creditor, in good faith and without security, gave further credit to the debtors, by selling them on credit other merchandise which became part of their estates, to the amount of

$149.24. Upon proof of claim by this creditor the referee held that this payment of $136.07 was a preference received by the creditor, which must be surrendered before the claim of the creditor could be allowed, but that in making such surrender the creditor was entitled to set off the new credits so given to the bankrupts in good faith and without security, after the receipt by the creditor of the preferential payment; and that, as such new credits exceeded the preference, there was, after the set-off, no sum, parcel of the preference, left to be paid to the trustee to accomplish the surrender. The referee, therefore, allowed the claim of this creditor at the sum owing before the preferential payment...................................... $217 79

New credit, $149.24, less set-off against the preferential payment of $136.07................................... 13 17

Allowed claim............................... $230 96

The trustee excepted to this ruling and allowance by the referee, contending that because this creditor received the preference innocently, without suspicion of the insolvency of the debtors, it had no right, in the surrender of the preference, to set off such subsequent credits given to the debtors, in good faith without security, and for merchandise which became part of the debtor's estate. He contended that section 60c of the bankruptcy act was enacted solely for the benefit of creditors who had received preferences in bad faith, having reasonable cause to believe that a preference was intended.

I examined this question in a case not reported, prior to any reported decision on the subject, and held that section 60c applied to creditors who had innocently received preferences no less than to creditors who had received preferences in bad faith, and such has since been the ruling in this district. There has since been considerable conflict of decision upon this question; the judge of the Northern district of Illinois (In re Ryan [D. C.] 105 Fed. 760), and the circuit court of appeals of the Seventh circuit (McKey v. Lee, 45 C. C. A. 127, 105 Fed. 923), construing the act as I did, while the judge of the Northern district of Iowa (In re Christensen [D. C.] 101 Fed. 802; In re Keller [D. C.] 109 Fed. 118, 125) holds that section 60c applies only to creditors who have received preferences in bad faith. As these four decisions present the arguments on both sides of the question, I need not refer to others which have been reported. A careful examination of them all, and of the act, brings me to the conclusion that my first holding was correct.

All the provisions of the act relating to the rights of creditors who have received preferences, with the possible exception of the use of the word "recoverable," in section 60c, are set forth in language so plain that there is little room for misapprehension. A distinction is made between the case of a creditor who has innocently received a preference, with no cause for suspecting insolvency of the debtors, and the case of a creditor who has received a preference having reasonable cause to believe that it was intended as a preference. It will be matter of surprise if it is found that the act is so drawn as to give the creditor who has received a preference in bad faith a plain advantage over the creditor who has innocently received a pref-

erence. Section 57g provides: "The claims of creditors who have received preferences shall not be allowed, unless such creditors shall surrender their preferences." This clause applies to all creditors who have received preferences, whether in good or bad faith. If they surrender their preferences, their claims will be allowed; and, if there were no other provisions applicable, all creditors having received preferences would have the option to keep their preferences, and forego further claims on the bankrupt estate, or to surrender their preferences and prove their claims. In case of surrender the preferences would be "recovered" by the trustee through the coercive provisions of the act, compelling the creditor to give back the preference under the penalty of losing the rest of his claims against the estate. Section 60a merely defines what is a preference, and it is seen that a preference may exist irrespective of good or bad faith. Section 60b provides that when the creditor receiving or to be benefited by the preference, or his agent acting therein, shall have had reasonable cause to believe that it was intended thereby to give a preference, it shall be voidable by the trustee, and he may recover the property or its value from such person. Under the provisions of this clause, a creditor who in bad faith has received a preference cannot withhold it from the trustee. This clause takes away the option which such a creditor would otherwise have, under section 57g, to retain his preference and forego proof of his claims. But he has still the right, under section 57g, to surrender his preference, so received in bad faith, to the trustee, and thereupon have his claims allowed, and the trustee would thus, through the coercive force of the act, "recover" the preference.

Section 60c provides:

"If a creditor has been preferred, and afterwards in good faith gives the debtor further credit without security of any kind, for property which becomes a part of the debtor's estates, the amount of such new credit remaining unpaid at the time of the adjudication in bankruptcy may be set off against the amount which would otherwise be recoverable from him."

The language of clause "c" is general, and covers, by its terms, every case where "a creditor has been preferred." And it is to clause "a" of the same section that we must look to determine whether any particular creditor is a creditor who has been preferred. No syllable in clause "c" purports to confine its operation to the particular class of preferred creditors who appear to be fully dealt with by the terms of clause "b."

All the reasoning attempting to maintain that clause "c" applies only to creditors who have received preferences in bad faith (aside from that based in the word "recoverable") consists of criticisms of clause "c" and of its practical effect, which criticisms are equally valid whichever construction is given to it, and therefore irrelevant. For instance, it is shown in the Keller Case, clearly enough, that to allow a preferred creditor, when he comes to surrender his preference and to prove his claims, to set off against the amount of such preference the new credits, which after receiving the preference he in good faith gave to the debtor, is in itself a preference, to the extent which such set-off exceeds the percentage which the creditor

would have received on the same credits had they been given before the preference was received, or had there not been any preference. This is plain enough, and, had it been called to the attention of congress while the matter was under consideration, might have been a persuasive argument in favor of striking clause "c" out of the bill. But the courts cannot abrogate clause "c" even though it is subject to this just criticism; and there appears to be no equity and little reason in attempting to twist its plain language to reach a construction giving all its obvious advantages to creditors who in bad faith receive preferences, and denying them to creditors who receive preferences innocently.

Under such a construction, the practical operation of clause "c" will be made to appear by a supposititious case: A., an insolvent, is indebted to B., one of his many creditors, in the sum of $10,000, and pays B., who then has reasonable cause to believe him insolvent, $4,000. A month later an apparent change in A.'s circumstances convinces B. that A. is solvent, and he, in good faith, without security, gives A. a further credit of $3,000, for property which becomes part of the debtor's estate. One month later A. is adjudicated a bankrupt, and it is estimated that his estate will pay all creditors 75 per cent. B. is willing to surrender his preference and prove his claim, which he may unquestionably do, pursuant to section 57g; and he is the more willing to do this as he knows that his preferential payment of $4,000 is voidable, and "recoverable" from him by the trustee, under section 60b. If he is well advised, he knows, further, that if such preference is recovered from him by action, he will not be deemed to have surrendered it, and, while losing his preference, he will not be allowed to prove his claim. In re Richter's Estate, 1 Dill. 544, Fed. Cas. No. 11,803, cited in the Keller Case (D. C.) 109 Fed. 118, 126. He is therefore very willing to surrender his preference without action. But, in making such surrender, he is entitled to set off against the amount of the $4,000 preferential payment which he received in bad faith the amount of the new credit, $3,000, which he gave to the debtor in good faith, subsequent to the preference; and his payment to the trustee of $1,000, the balance after such set-off, will be a complete surrender of his preference, under section 57g, as modified in such case by section 60c. This must be so, as the supposed case contains all the conditions of section 60c to let in the right of set-off, and the $4,000 received in bad faith by the creditor, B., was "recoverable" by the trustee, beyond question. But if the actual case differed from the one just supposed only in the circumstance that the creditor received the preferential payment innocently, without cause for suspecting that the debtor was insolvent, must the court, solely because of his honesty and good faith, laboredly wrest a meaning from section 60c beyond the import of its terms, to put the creditor who has acted in good faith in a worse position than the creditor who has acted in bad faith, thus placing dishonesty at a premium? The tenor of the entire act makes such construction of the clause under consideration inadmissible. Clause "c," as it states in express terms, applies to every case where "a creditor has been preferred." This act is not expressed in a lan-

guage so technical that we are forced to stumble over the word "recoverable" into a position compelling us to favor dishonesty. The word is used in its ordinary sense, as the equivalent of "obtainable." That is recoverable which may be regained, reached, or come at. A preference surrendered to a trustee is recovered. As well might "set-off" be claimed to have some occult bearing on the interpretation of the clause. Though of comparatively recent use as a technical phrase, it was always appropriate to describe the process whereby, in the settlement of mutual accounts or demands, items on the one side are used to satisfy and cancel items on the other side, and thus ascertain the balance. In this clause both of these terms are employed in the ordinary sense understood by laymen.

The ruling of the referee is affirmed.